# UNITED STATES DISTRICT COURT
for the
District of South Dakota
Western Division

In the Matter of the Search of:                )
                                               )    Case No. 5:23-mj- 161
USA v. 23-153-05                               )
                                               )
                                               )
                                               )
                                               )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the District of _____ South Dakota _____, there is now concealed *(identify the person or describe the property to be seized)*:

See **ATTACHMENT B**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2241(a) and 1153 | Aggravated Sexual Abuse |
| 18 U.S.C. § 1201(a)(2) | Kidnapping |

The application is based on these facts:

☒ Continued on the attached affidavit, which is incorporated by reference.

☐ Your applicant requests authorization to serve the search warrant any time day or night pursuant to Fed. R. Crim. P. 41(e)(2)(A)(ii), the basis of which is set forth in the attached affidavit.

_____
*Ramon Maruffo, OST CI*

_____
*Daneta Wollmann, U.S. Magistrate Judge*

Sworn to before me and: ☒ signed in my presence.
submitted, attested to, and acknowledged by reliable electronic means.

Date: _____ August 17, 2023 _____

_____
*Judge's signature*

City and state: _ Rapid City, SD _

_____ Daneta Wollmann, U.S. Magistrate _____
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of South Dakota

In the Matter of the Search of                         )

       USA v. 23-153-05                         )    Case No. 5:23-mj- 161

                                         )

                                         )

                                         )

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

    An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of __South Dakota__ *(identify the person or describe the property to be searched and give its location)*:

    SEE "ATTACHMENT A", which is attached to and incorporated in this Application and Affidavit.

    I find that the affidavit, or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

    Evidence of a crime(s) in violation of 18 U.S.C. §§ 2241(a) and 1153, Aggravated Sexual Abuse, and 18 U.S.C. § 1201(a)(2), Kidnapping, as described in **ATTACHMENT B**, attached hereto and incorporated by reference.

    I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

    **YOU ARE COMMANDED** to execute this warrant on or before ___*August 31, 2023*___ *(not to exceed 14 days)*

☒ in the daytime  6:00 a.m. to 10 p.m.    ☐ at any time in the day or night because good cause has been established.

    Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

    The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to __Daneta Wollmann__.
                                                 *(United States Magistrate Judge)*

    Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
    for _____ days *(not to exceed 30)*.    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: __August 17, 2023__        _____
                                                       *Judge's signature*

City and state:    __Rapid City, SD__              __Daneta Wollmann, U.S. Magistrate__
                                                  *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return |
|---|

| Case No.:<br>5:23-mj- 161 | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*


_____
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | Case No.   5:23-mj-161 |
| | AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT |
| USA v. 23-153-05 | |

STATE OF SOUTH DAKOTA )
)
COUNTY OF PENNINGTON )

I, Ramon Maruffo, Special Agent of the Federal Bureau of Investigation (FBI) being duly sworn, states as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I am an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2.     I have been a Special Agent with the OSTDPS since October 2022.  I investigate a multitude of Federal criminal violations occurring in Indian country on the Pine Ridge Reservation.

3.     Prior to my employment with OSTDPS, I served as a law enforcement officer with a K9 for the Rosebud Sioux Tribe and Cheyenne River from 2016-2022.  I have been a sworn law enforcement officer since 2007.

4.     The information set forth below is based upon my knowledge of an investigation conducted by the OSTDPS and the investigation of other law

enforcement agents and officers. I have not included each and every fact obtained pursuant to this investigation, but have set forth those facts that I believe are essential to establish the necessary probable cause for the issuance of the search warrant.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**ITEMS TO BE SEARCHED FOR AND SEIZED:**

6. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook URLs that are stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

7. Based on my training, experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of 18

2

U.S.C. §§ 2241(a) and 1153, Aggravated Sexual Abuse and Kidnapping in violation of 18 U.S.C. § 1201(a)(2), are present in the accounts of Facebook URLs: www.facebook.com/drace.dreamingbear and www.facebook.com/mattiecrossdog420. There is also probable cause to search the information described in Attachment A for evidence, contraband, or fruits of these crimes, as further described in Attachment B.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

8.    On the morning of December 4, 2022, your affiant learned of an acute sexual assault that had taken place just hours earlier. Your affiant responded to Indian Health Services Hospital (IHS) on the morning of December 4, 2022, and spoke with 19 year old Lathon Cross Dog. Cross Dog reported that she had been sexually assaulted by Drace Dreaming Bear, on the evening of December 3, 2022. and/or early morning of December 4, 2022.

9.    Your affiant learned that Cross Dog was picked up by Drace DREAMING BEAR at a relative's residence in Pine Ridge. At the time, DREAMING BEAR had recently met Cross Dog (over Facebook) and the two were exchanging messages on Facebook messenger prior to the sexual assault.

10.    Your affiant learned from a review of Oglala Sioux Tribe Department of Public Safety Dispatch (OSTDPS) records that at approximately 12:30 AM on December 4, 2022, OSTDPS received a 911 call from a residence in Oglala. The 911 call was an open 911 call and the female caller stated, "just leave me alone, I want to go home."

3

11.    Approximately 20 minutes later, Angela Fighting Bear called Dispatch to report that she received messages from her friend, Lathon Cross Dog, saying that she was being raped [by DREAMING BEAR].  Law enforcement was able to piece together the first call (open 911) from the unknown female and the second call by Fighting Bear and determined the originating location of the distressed female caller, later identified as Lathon Cross Dog.

12.    At approximately 1:49 AM, on December 4, 2022, Officers Ivan Starr and Jarrian Ribitsch arrived at a residence that corresponded with the coordinates of the 12:30 AM dropped 911 call.  Deann Dreaming Bear answered the door.  Officer Starr inquired about who was in the home.  Deann stated there was a girl in the backroom, but she did not know who it was.  Officer Starr entered and found a female (Cross Dog) dressed in black and a male next to the Cross Dog without a shirt on.  The male was identified as Drace DREAMING BEAR.

13.    Your affiant learned from reports that DREAMING BEAR was upset that Cross Dog was going to be taken home.  Your affiant learned that DREAMING BEAR tried to pull Cross Dog back to the bed.  Cross Dog told DREAMING BEAR "you wouldn't let me leave," after DREAMING BEAR asked what was going on.  After the parties were separated, Officer Starr asked Cross Dog what happened.  Your affiant learned from reports that Cross Dog told Officer Starr that she had been raped.  Your affiant learned that Officer Starr immediately returned to DREAMING BEAR's location and provided him with a

4

Miranda warning. Your affiant learned that DREAMING BEAR then attempted to cry and stated, "I fucked up."

14. Your affiant learned that Cross Dog told Officer Starr that DREAMING BEAR was intoxicated, and that on the way to his residence he grabbed her inner thigh, squeezed and then asked if she was going to be with him. DREAMING BEAR made comments that if she messed around with someone else, he would shoot her and the man she messed around with. Cross Dog told officers she had not consumed alcohol and submitted to a PBT. Cross Dog's PBT was .000.

15. Cross Dog disclosed experiencing multiple incidences of forced anal/penile and penile/vaginal as well as digital/vaginal penetration all occurring on one night. Cross Dog described that initially she didn't realize DREAMING BEAR was intoxicated, although he began being aggressive in grabbing and pinching her inner thigh. Cross Dog expressed that she was choked and slapped when she didn't do what he wanted as she described three separate times, she was choked describing being dizzy, having difficulty breathing and causing her to cough, as well as having fallen asleep. Cross Dog also described having hurt her head, when it was hit during the assault against the wall, in addition to DREAMING BEAR slapping/hitting her face and back. Cross Dog provided your affiant with a snapshot of messages between her and DREAMING BEAR. DREAMING BEAR and Cross Dog exchanged messages in which DREAMING BEAR asked Cross Dog for her location. Your affiant learned

5

from Cross Dog that on the day of the sexual assault, DREAMING BEAR had picked her up from a relative's residence and the reason DREAMING BEAR knew where Cross Dog was at was because of the Facebook messages. Your affiant believes that the communication between DREAMING BEAR and Cross Dog corroborates the kidnapping charge that Cross Dog discussed when interviewed. Had the two not exchanged messages, DREAMING BEAR would not have picked Cross Dog up and the crime would not have occurred that evening. Your affiant believes that the Facebook communication (from DREAMING BEAR'S) account is evidence of identity of the subject (DREAMING BEAR) and res gestae of the crime.

16.    Your affiant interviewed DREAMING BEAR while in custody in Pine Ridge. DREAMING BEAR denied having sexual intercourse with Cross Dog. DREAMING BEAR advised that he had a sexually transmitted disease and that if he had intercourse with her, she would test positive for a sexually transmitted disease. Your affiant obtained DREAMING BEAR's medical records, which corroborated his STD. DREAMING BEAR consented to a buccal swab and the SD forensic laboratory analyzed the sexual assault kit against DREAMING BEAR's DNA.

17.    Your affiant learned from the results of a lab repot on March 10, 2023, that at least one male DNA sample was found on the vaginal swabs (.02), vaginal/perineum swabs (.05), anal (.03) and oral (.04), but due to insufficient male DNA autosomal DNA profiling could not be performed. Your affiant also

6

learned that the neck swabs indicated a positive match for DREAMING BEAR's DNA. Finally, Y-STR DNA testing could not exclude DREAMING BEAR as the contributor of the DNA found on .02 (vaginal swabs) and .05 (vaginal/perineum).

18. Your affiant collected photographs of Facebook messages that were sent from Cross Dog Facebook to her friend Angela Fighting Bear. The messages are from shortly after midnight on December 3, 2022. The messages from Cross Dog indicate that she was scared and that he [DREAMING BEAR] was raping her. Additional messages between DREAMING BEAR and others were captured by your affiant with digital film.

19. Your affiant learned that DREAMING BEAR's and Cross Dog's Facebook accounts were preserved on March 13, 2023. Your affiant is aware that when Facebook preserves an account at the request of law enforcement, that the Facebook account does not change. Thus, preserving the Facebook account allows law enforcement to go back and search the account when a warrant is applied for and granted.

20. Your affiant arrested DREAMING BEAR in June 2023.

21. Your affiant is requesting a search and seizure warrant authorizing the search and seizure of both DREAMING BEAR's account and Cross Dog's account. The accounts are: www.facebook.com/drace.dreamingbear, and www.facebook.com/mattiecrossdog420.

22. The court previously authorized a search warrant for the accounts, however, your affiant inadvertently let the timeframe (for executing the warrants)

7

lapse. It came to your affiant's attention at the end of July 2023, when the AUSA inquired about the accounts. Your affiant was subsequently in trial and out of the office. Your affiant is requesting a new warrant authorizing the search and seizure of the accounts.

## INFORMATION ON META, PREVIOUSLY KNOWN AS FACEBOOK

23. Meta Platforms, Inc. owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows individuals to specifically communicate with another person through a Facebook application called "Messenger." In my training and experience, people who engage in criminal activity often utilize Facebook to communicate about those activities.

24. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

25. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip

8

code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

26. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

27. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

28.    Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

29.    Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

10

30. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date and time of each call.

31. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

32. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. In addition to being able to "like" a post or page, Facebook users can also have other "reactions" such as a thumbs up, sad fact, or heart. Facebook users can also become "fans" of particular Facebook pages.

33. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

11

34.    Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

35.    Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

36.    The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

37.    Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

38.    In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

12

39.    Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

40.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

41.    Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical

13

problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

42. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic

14

context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement or discussing events surrounding a crime with other Facebook users).

43. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

44. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the

15

government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized people will review that information to locate the items described in Section II of Attachment B.

## REQUEST/JUSTIFICATION FOR ORDER OF NONDISCLOSURE

45.    The United States respectfully applies for an order of nondisclosure to Facebook under 18 U.S.C. § 2705(b) regarding the account associated with URLs:                www.facebook.com/drace.dreamingbear                and www.facebook.com/mattiecrossdog420.    The United States is seeking this search warrant for user information, including all names, addresses, IP addresses, including historical, telephone numbers, other email addresses, information on length and types of services and any means of payment related to these accounts under the authority given by 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A). Based on § 2703(c)(3), the United States is not required to provide notice to the subscriber. Under § 2705(b), the United States may apply to the court for an order commanding Facebook not to notify the subscriber of the existence of the search warrant. The court may decide what length of time shall apply to the order of nondisclosure if the court determines the notification to the subscriber could result in one of the five factors listed in the statute, which includes destruction of or tampering with evidence. 18 U.S.C. § 2705(b)(3). The basis for the request is that such disclosure could cause any

16

person with access to the accounts, or any related account or account information, to tamper with or modify the content or account information and thereby destroy or tamper with evidence and otherwise seriously jeopardize the investigation. Especially due to the ease of access to Facebook, its content can be modified by persons with internet access and sufficient account information. As such, the United States respectfully requests this Court enter an order commanding Facebook not to notify the user of the existence of this warrant.

## REQUEST/JUSTIFICATION ORDER TO SEAL

46.    I request an order sealing this case until further order of the Court, in that this search is being conducted as part of an ongoing federal criminal investigation and contains information from persons cooperating with law enforcement.    Disclosure of information contained in the documents incorporated in this search and filed with the Court could seriously jeopardize this ongoing investigation.

## CONCLUSION

47.    I submit that based on the facts set forth in this affidavit, there is probable cause to believe the Facebook URLs:

www.facebook.com/drace.dreamingbear, and

www.facebook.com/mattiecrossdog420,

as described in Attachment A, contains evidence, fruits, and or instrumentalities of violations of 18 U.S.C. §§ 2241(a) and 1153.  Therefore, I request permission to search the Facebook account URLs: www.facebook.com/drace.dreamingbear

17

and www.facebook.com/mattiecrossdog420 in Attachment A for the evidence, fruits, and instrumentalities identified with particularity in Attachment B.

48.     Based on the foregoing, I request that the Court issue the proposed search warrant.

_____
Ramon Marrufo
OST Criminal Investigator

Sworn to before me and: ☑ signed in my presence.
                               ☐ submitted, attested to, and acknowledged by reliable
                               electronic means.


This 17th day of August, 2023.

_____
Daneta Wollmann
United States Magistrate Judge

18

## ATTACHMENT A
### Property to Be Searched

This warrant applies to information associated with the Facebook URLs:

www.facebook.com/drace.dreamingbear, and

www.facebook.com/mattiecrossdog420, that are stored at premises owned,

maintained, controlled, or operated by Meta Platforms, Inc. (formerly Facebook

Inc.), a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

## I.    Information to be disclosed by Meta Platforms, Inc.

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, Inc. (formerly Facebook Inc., hereinafter "Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

    (a)    All contact and personal identifying information, including for Facebook URLs: www.facebook.com/drace.dreamingbear and www.facebook.com/mattiecrossdog420:  full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

    (b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

    (c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)     All information about the Facebook pages that the account is or was a "fan" of;

(j)     All past and present lists of friends created by the account;

(k)     All records of Facebook searches performed by the account;

(l)    All information about the user's access and use of Facebook Marketplace;

(m)    The types of service utilized by the user;

(n)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of Aggravated Sexual Abuse 18 U.S.C. §§ 2241(a) and 1153, and Kidnapping in violation of 18 U.S.C. § 1201(a)(2), from November 1, 2022, until December 7, 2022, including for each user identified on Attachment A.

3

Please fill out this form and return it with your subpoenaed records It may avoid the necessity of someone from your office having to appear at trial and testify as to the authenticity of the records.  Thank you)

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by

_____,

hereinafter PROVIDER), and my title is _____.

I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER.  The attached records consist of (generally describe records, i.e., number of pages/CDs/megabytes) _____

_____.

I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.     such records were generated by PROVIDER'S electronic process or system that produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.     the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.


_____        _____

Date                                   Signature